UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOYCE VANDEVENDER and CLAUDE VANDEVENDER**, <br><br> Plaintiff, <br><br> v. <br><br> **KEYBANK, a national association doing business in the State of Michigan**, <br><br> Defendant. | 2:19-cv-11834 <br><br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Joyce Vandevender slipped and fell on black ice in the parking lot of the Keybank in Adrian, Michigan. She and her husband bring this suit for negligence against the bank. Under Michigan law, if the ice was "open and obvious," the bank owed her no duty to warn or mitigate the hazard. Because the Court concludes that there is a question of material fact as to whether the black ice that Plaintiff had slipped on was open and obvious, Defendant's motion for summary judgment will be **DENIED**.

## I. Background

On a cold and early mid-November morning, Ms. Vandevender set out for an errand to make a deposit for her daughter at a bank in Adrian, Michigan. ECF No. 29, PageID.354. Weather reports showed some light precipitation with temperatures hovering around 32 degrees Fahrenheit.

1

*See* ECF No. 26-4. Fog covered the area throughout the night and it continued to linger that morning. *Id.* at PageID.231.

At approximately 9:08 a.m., Plaintiff was driving her red van on the state highway. She testifies that the roads were dry and clear. She turned left onto the bank's driveway, drove past a grassy area with some snow on it, and pulled into the bank's front parking lot. *See* ECF No. 26-3, PageID.179. Video footage from the bank's parking lot surveillance camera recorded her arrival and provides a full view of the entire incident. ECF Nos. 26-2 and 32, PageID.494. Being the first customer of the day, she had her choice of parking spots and so she parked at the designated handicap spot closest to the bank's entrance. ECF No. 26-3, PageID.182. Moments after parking, Ms. Vandevender stepped out of her vehicle. She admits that she did not first look down to check the conditions of the ground where she was stepping. On her second step, she immediately slipped and fell onto the black pavement. *Id.* at PageID.183-84. As she was lying on her back and shouting for help, some of the bank's employees saw what had happened and rushed out to assist her. *Id.* at PageID.186. The witnesses that had gathered around her called for an ambulance and for Plaintiff's husband. *Id.* at PageID.190. An ambulance arrived in minutes and transported her to the hospital.

As a result of her fall, Plaintiff was hospitalized for five days. ECF No. 1-2, PageID.13. She suffered a fractured shoulder, developed a blood

clot in her left leg, and pneumonia. ECF No. 29, PageID.355. This episode led her to undergo physical and occupational therapy for a significant period of time. *Id.*

On May 9, 2019, Plaintiff, along with her husband Claude Vandevender, filed suit in Michigan state court alleging negligence and loss of consortium. *See* ECF No. 1-2. Shortly after, Defendant removed the case to this Court on the basis of diversity jurisdiction. ECF No. 1. After the close of discovery, Defendant motioned for summary judgment. ECF No. 26.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. "[A] mere scintilla of evidence in support of the nonmovant's position is not sufficient to create a genuine issue of material fact." *Towner v. Grand Trunk Western R. Co.*, 57 Fed. App'x 232, 235 (2003) (citing *Anderson*, 477 U.S. at 251-52). Rather, the non-moving party must present sufficient evidence as to each element of the case such that a trier of fact could reasonably find for the plaintiff. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. Discussion

Here, Defendant asserts that it is entitled to summary judgment because (i) "the alleged dangerous condition, ice in the parking lot, was open and obvious because the ice was visible upon casual inspection and the weather conditions the morning of the subject incident formed the indicia of a potentially hazardous condition" and, in the alternative, (ii)

4

"even if the ice was not open and obvious…there is no evidence that [Defendant] had notice of the alleged dangerous condition prior to the subject incident." ECF No. 26, PageID.106. Plaintiff responds that the weather conditions that morning "did not form the indicia of a potentially hazardous condition" and that Defendant had notice of the black ice because a bank witness testified to being aware that it "had formed in the lot throughout the years." ECF No. 29, PageID.370-74. In its reply, Defendant counters that a casual inspection of the premises on that morning reveals indicia of black ice, including the presence of snow in the surrounding area, visible fog and moisture in the air, and the temperature at around 32 degrees Fahrenheit. ECF No. 32, PageID.496.

The Michigan Supreme Court has held that "a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001).[1] This duty, however, does not require perfection on the part of the premises possessor. If a danger on the property is open and obvious to an invitee, premises owners owe no duty to protect or warn of this kind of danger. Such open and obvious dangers naturally apprise an invitee of the potential hazard, which the invitee is able to take reasonable care to

---

[1] The substantive law of Michigan governs the claims here because this case is in federal court on the basis of diversity jurisdiction. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

5

avoid. But the law also recognizes that for certain kinds of open and obvious dangers, those involving so-called "special aspects," "the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id.* at 517. Special aspects are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Id.* at 518-19. Examples of "special aspects" that would give rise to a duty for the premises owner are where the dangerous condition presents such "an unreasonably high risk of severe harm" that owners should be expected to protect invitees from it, and situations where the otherwise obvious danger is "effectively unavoidable." *Id.* at 517-18. Common open and obvious dangers "do not give rise to these special aspects." *Id.* at 520.

### a. There is a question of material fact as to whether the black ice was open and obvious.

Here, for the purposes of premises liability, Defendant is a commercial premises possessor who owes invitees, like Plaintiff here, "a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *See* ECF No. 29, PageID.369; *see also Hoffner v. Lanctoe*, 492, Mich. 450, 460 (2012). Thus, because Defendant owed Plaintiff a duty of care owed to an invitee, the issue is whether the black ice on the parking lot on the morning of the incident was "open and obvious."

The Michigan Court of Appeals addressed the question of whether black ice could be considered open and obvious in the case of *Slaughter v. Blarney Castle Oil Co.*, 281 Mich. Ct. App. 474, 483 (2008). While noting that "the hazards presented by snow, snow-covered ice, and observable ice are open and obvious and do not impose a duty on the premises possessor to warn of or remove the hazard," *Id.* at 481., the Court of Appeals in *Slaughter* considered the narrower question of "whether black ice *without* the presence of snow is an open and obvious danger." *Id.* at 475 (emphasis added). In that case, plaintiff injured her back when she slipped and fell while as an invitee at defendant gas station. *Id.* at 475. The plaintiff was not able to see the ice or snow because the parking lot was paved with black asphalt. Although it had not snowed for a week, rain started to fall during the time of the incident. The court noted that "the danger and risk presented by a wet surface is not the same as that presented by an icy surface." And even though the defendant argued that wintertime in northern Michigan rendered any weather-related situation open and obvious, "reasonable Michigan winter residents know that each day can bring dramatically different weather conditions." *Id.* at 484. The Court noted that "[t]he overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent." *Id.* at 483. With that in mind, the court declined to extend the open and obvious doctrine to black ice unless "the black ice in question would have been visible on casual inspection before the fall

7

or without other indicia of a potentially hazardous condition." *Id.* at 483. Under the reasoning of *Slaughter* black ice in the absence of snow may be considered open and obvious only when (1) to an average person with ordinary intelligence, the black ice would have been visible upon casual inspection before a plaintiff's fall or (2) there are indicia of a potentially hazardous condition such as would give notice to such a person of the need to avoid the hazard.

Here, there is a question of material fact as to whether the black ice that caused Plaintiff to slip and fall and injure herself was open and obvious. Although in Plaintiff's deposition testimony she admitted that she failed to observe the condition of the pavement before exiting her vehicle, the relevant inquiry is an objective rather than subjective one. The question therefore is not whether Plaintiff should have done more to make sure she saw the black ice, it is whether the black ice was visible upon casual inspection to a reasonable person *before* Plaintiff fell. ECF No. 26-3, PageID.181-83. In her deposition, Plaintiff stated that she knew "that community like the back of my hand and I knew the pavement was dry. The road was dry." *Id.* at PageID.185. Defendant interprets this statement to mean that Plaintiff did not observe her surroundings prior to exiting her vehicle because she assumed from past visits and her familiarity with the weather conditions as a resident of the area that the parking lot's surface would be dry. ECF No. 26, PageID.115. But, again,

8

what Plaintiff observed or failed to observe is irrelevant because "[t]he test is objective, and the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *See Slaughter*, 281 Mich. Ct. App. at 479. But even if Plaintiff's actual knowledge were relevant, there remains a question of fact because it is also reasonable to interpret Plaintiff's statement to mean that she knew the pavement was dry after having driven on, and therefore observed the conditions of, the roads that morning. From this testimony, a jury might conclude that she did "casually inspect" her surroundings generally and saw no ice or indicia of potential hazard, though she admits she did not inspect the ground where she placed her foot.

With regard to the observable conditions, eyewitness testimony from Defendant's employees also establishes a dispute of material fact as to whether the black ice was visible on casual inspection before Plaintiff's fall. For example, Alayah Aldrich, a bank teller, was the first to rush out and help Plaintiff after she had fallen. ECF No. 26-5. In her deposition, when asked about whether she recalled seeing any ice or snow on the ground that morning but prior to Plaintiff's fall, Aldrich answered no. *Id.* at PageID.241. Aldrich admitted that there was ice or snow visible in the surveillance footage, but only after reviewing the portion of the

9

surveillance footage where Plaintiff had already fallen. *Id.* at PageID.243-45. Aldrich goes on to remark how she saw ice in the area only after she began to help Plaintiff. But Michigan law's open and obvious doctrine requires that black ice be visible upon casual inspection before a plaintiff's slip and fall. *See Slaughter*, 281 Mich. Ct. App. at 483. Black ice that is visible after a plaintiff's fall is inapposite with *Slaughter*'s "casual inspection" test because once a person slips and falls, a reasonable observer is put on notice that there is something on the ground and is inclined to inspect more closely. *See id.* Aldrich's statement corroborates this tendency because she testified that when she rushed out to help Plaintiff, "I wasn't paying attention to the parking lot, I was paying attention to [Plaintiff]." *Id.* at PageID.242. When asked whether she saw any ice on the pavement as she rushed to assist Plaintiff, she answered, "When I was standing over top of [Plaintiff] I was honestly only paying attention to [Plaintiff]." *Id.* at PageID.245.

Cindy Frayer, Defendant's lead bank teller, was another witness to the incident and her deposition testimony is even more ambivalent about the obviousness of the black ice. ECF No. 26-6. Frayer noted that as she approached Plaintiff *after* her fall, "I just noticed that…the pavement was wet." *Id.* at PageID.277. Only after further questioning did Frayer admit that there was ice on the pavement. *Id.* But even so, Frayer stated that the first time she observed that the pavement was not just wet but

10

also icy was when she stood "right by [Plaintiff's] head, I was standing over her." *Id.* at PageID.278. Again, Michigan law requires that the black ice be visual upon casual inspection *before* Plaintiff's fall. *See Slaughter*, 281 Mich. Ct. App. at 483. Moreover, as in *Slaughter,* Frayer's testimony does not resolve whether a person of ordinary intelligence would have been able to tell, upon casual inspection, that the pavement was merely wet or was icy before Plaintiff's fall. And as *Slaughter* explained, "the danger and risk presented by a wet surface is not the same as that presented by an icy surface." *Id.* at 478. This ambiguity constitutes a question of material fact.

In addition, a review of the surveillance footage of the incident does not resolve the question as to whether a reasonable person would be able to observe either ice or indicia of a potential hazard: it merely shows that certain areas of the parking lot are darker than the rest of the black asphalt. ECF No. 26-2. One cannot tell from the video whether the dark spots are black ice or just wet pavement. For example, when Frayer was asked to review the surveillance footage and comment on the darker spots visible in the parking lot, she remarks that "I couldn't tell if it was ice or of it was just wet." ECF No. 26-6, PageID.290. Accordingly, the disputes between Plaintiff's testimony, eyewitness testimony from the bank's employees, and the surveillance footage itself, clearly raise

11

genuine issues of fact for the jury to decide. *See Lugo*, 464 Mich. at 518-19.

Defendant argues that even if the black ice was not visible upon casual inspection, there were indicia of a potentially hazardous condition because the conditions that morning put Plaintiff on notice that there would be black ice in the premises. ECF No. 26, PageID.120. Defendant points to the temperature, the precipitation, and the presence of remnants of snow in some areas. *Id*. Weather reports from the date and time of the incident indicate that Toledo Express Airport, which is about 32 miles from Adrian, Michigan, had temperatures at around 32 degrees Fahrenheit, which is the point in which water begins to freeze. ECF No. 26-4, PageID.231. The report shows that the conditions had been cloudy and foggy with some precipitation that morning. In addition, Plaintiff recalled the weather conditions that morning as "cold" and "clear." ECF No. 26-3, PageID.177.

But deposition testimony from Defendant's employees raise a question of material fact as to whether there were indicia of potentially hazardous black ice. While Defendant describes them as snowbanks, Plaintiff remarked that in the area around the parking lot, "there was banked up snow in places." *Id*. at 178-79. Aldrich's deposition testimony, however, rejects characterizing the snow in the surveillance footage as "snowbanks." ECF No. 26-5, PageID.244. Rather, the snow appears to be

12

remnants of snow or mere frost. *See* ECF No. 26-2. Beth Vanarsdall, a select licensed relationship manager at the bank branch, observed some snow in the area around the parking lot. ECF No. 26-7, PageID.330.

Furthermore, there is ambiguity as to whether there were sufficient wintry conditions to constitute indicia of a potentially hazardous black ice. A temperature of 32 degrees Fahrenheit is the point at which water merely begins to freeze; it is not the kind of freezing cold that the average Michigander associates with the probability that ice will be present, particularly when it is not yet winter and still mid-November. There was no snowfall or rain. Even Frayer noted that she had no reason to believe that there would be ice in the parking lot that morning. *See* ECF No. 26-6, PageID.280, 286-87. It is true that the bank employees park in a separate parking lot and the employees admit to not having a reason to observe the parking lot at issue here. But their observations about the weather conditions that morning, such as the temperature, lack of precipitation, and the presence of some snow or ice, are likely applicable to both parking lots given their proximity to one another. The parking lots are adjacent to one another, as the parking lot at issue here is on the bank's eastside and the employee parking lot is on the bank's southside. ECF No. 26-7, PageID.306. Moreover, as Vanarsdall described in her testimony, both employees and customers enter the bank through the front door entrance. *Id.* at PageID.306-07. This means that even though

13

employees park in a different lot, the employees were in a position to observe the conditions of the front parking lot when they walked past it in order to enter the bank. *See id.*

Weather reports and depositions from the Plaintiff and Defendant's employees witnesses shows that temperatures had hovered around the freezing point throughout the morning, there were remnants of melted snow in the grassy areas surrounding the parking lot, and there was some precipitation and fog. But these conditions merely suggest that black ice may form, not that black ice had formed or was likely to form. Such ambiguous wintry conditions, coupled with ambivalent testimony from some of the bank employee witnesses, raise a question of material fact best left for a jury trial.

### b. Even if the black ice was open and obvious, there is no dispute of material fact as to whether there were special aspects.

Next, Plaintiff argues that even if the black ice was open and obvious, special aspects created an unreasonable risk of harm. ECF No. 29, PageID.374-75. In *Hoffner v. Lanctoe*, the Michigan Supreme Court ruled that special aspects, regardless of an open and obvious hazard, could give rise to liability either when the danger is unreasonably severe or when the danger is effectively unavoidable. 492 Mich. at 463. There, the court considered the extent to which a "readily apparent ice patch was effectively unavoidable and thus constituted a special aspect. *Id.* at

14

465. Effectively unavoidable conditions are "set in context of a condition that is inherently dangerous and thus poses a severe risk of harm." *Id*. The court held that the small patch of ice at issue "is of the same character as those open and obvious hazards—like an ordinary pothole or flight of stairs" that Michigan case law states "do not give rise to liability for a premises owner." *Id*.

Here, as the Court best understands it, Plaintiff asserts that because Defendant "had knowledge that 'throughout the years black ice appears' in that parking lot," as a premises possessor Defendant "has a duty to undertake reasonable precautions to protect invitees from that risk." ECF No. 29, PageID.374-75. But Plaintiff points to no case law and the Court cannot find authority for the proposition that premises possessors are liable for an open and obvious danger that they have knowledge of and that tends to occur on the premises.

In any event, a review of the doctrine of special aspects reveals that Plaintiff's focus on Defendant's knowledge of a general tendency for black ice to form on the parking lot is flawed as a matter of law. The special aspects doctrine is not about a premises possessor's knowledge of general harms that tend to occur in a particular area. Rather, special aspects have to do with either the severity of harm from such dangers or an invitee's inability to avoid such dangers. *See Hoffner*, 492 Mich. at 465 (establishing special aspects of an open and obvious danger "when the

15

danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*.") (emphasis in original).

None of Plaintiff's arguments are sufficient to raise a genuine issue as to the special aspects exception to the open and obvious doctrine. Defendant did not create conditions that effectively forced Plaintiff to park in the area where there was black ice. Because Plaintiff admitted that she did not observe the condition of the parking lot prior to exiting her vehicle, it cannot be said that she was aware that the circumstances of the premises left her with no alternative and required her to walk on the black ice. Moreover, the Michigan courts have held that slipping and falling due to an icy parking lot does not constitute an unreasonably high risk of danger. *Janson v. Sajewski Funeral Home, Inc.*, 486 Mich. 934, 935 (2010) (holding that conditions creating black ice was not unreasonably dangerous and therefore did not have any special aspect); *see also Lugo*, 464 Mich. at 519 (ruling that typical and open obvious dangers, such as ordinary potholes in a parking lot, do not give rise to special aspects). Finally, a review of the surveillance footage shows that Plaintiff had safer alternatives because the parking lot was empty and she was free to park where there was not any black ice. *See* ECF No. 26-2. Accordingly, assuming that it can be established that the black ice was open and obvious, there is no question of material fact as to whether there the dangerous conditions also contained special aspects.

16

## CONCLUSION

For the reasons set out above, the record before the Court reveals a dispute of material fact as to whether the dangers from the black ice that caused Plaintiff's injuries were open and obvious. Defendant's motion for summary judgment is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: January 19, 2021         s/Terrence G. Berg
                                                  TERRENCE G. BERG
                                                  UNITED STATES DISTRICT JUDGE